G. H. Bass & Company *vs.* Wilton Woolen Company.

Franklin.    Opinion July 12, 1918.

*Water rights.    Deeds.    Res adjudicata.*

This case comes up on report and involves a controversy over water rights.    The facts involved under the bill and answer are found in *Woolen Company* v. *Bass,* 112 Maine, 483.    The bill and answer contain practically the same facts involved in the former decision of this case.    In the former case the Woolen Company, the present defendant, was the plaintiff, and the present plaintiff the defendant.    The defendant in that case filed a cross bill, the material prayer of which was in effect, and almost in phraseology, the same as the prayer in the present bill.    The defendants in the present bill, in their answer, plead the defense of res adjudicata.

*Held:*

1.    That the issue raised in the present bill was put in issue by the pleadings in the former bill and cross bill, and under the well settled rules of law the plaintiff has had its day in court and the present contention must be regarded as res adjudicata.    There is another interpretation of the language of the deed which concludes the rights of the plaintiff.    The word "until" is a limiting or restric-tive word.    It does not negative or limit any right of the Woolen Company to use the water.    It does, however, manifestly limit the right of Bass & Com-pany after the water has reached the 4½ foot limit; then Bass & Company are reduced to 100 square inches.    And the purpose as well as the effect of the limiting word "until" was to accomplish this reduction.    We think this word, when fitted into the background of the transaction, as it must be to give it a fair interpretation, fully determines the plaintiff's rights.    It is almost incon-ceivable, if the parties understood the matter as the plaintiff now says, that they would have employed the language used in this deed to give expression to their purpose, when a single sentence properly phrased would have expressed exactly the meaning for which it now contends.    It is further inconceivable that the defendant company, having full power to protect its own business, would intentionally deprive itself, for the indefinite time the water might fluctuate between the top of the dam and the 4½ foot limit, of the use of sufficient water to operate its own mills, and thus leave them idle and unpro-ductive.

2.    That the language of the deed does not limit the rights of the defendant to the top of the dam.

Bill in equity to restrain defendant company in the use of certain water rights. Cause heard upon bill, answer and proof. Judgment in accordance with opinion.

Case stated in opinion.

*Frank W. Butler, and William M. Bradley,* for plaintiff.

*C. N. Blanchard, and E. E. Richards,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

SPEAR, J. On report. This case involves a controversy over water rights. In December, 1912, the Wilton Woolen Company, defendant in the present case, brought a bill in equity against the present plaintiff, to which an answer was duly filed. In May, 1913, the present plaintiff filed a cross bill against the present defendant to which an answer was also duly filed. The Woolen Company bill was sustained and a decree filed. The Bass Company cross bill was dismissed. The defendant contends that the present bill is concluded by the rule of res adjudicata, the whole matter as it claims having been determined or open to determination under the former bill and cross bill. We think this contention must prevail.

The facts involved under the bill and answer are found in *Woolen Co.* v. *Bass Co.,* 112 Maine, 483. Briefly rehearsed they are as follows: In 1898 F. J. Goodspeed of Wilton was the sole owner of all the water rights and privileges now involved. November 12, 1898, he conveyed certain rights to Gardner C. Fernald. This deed is not now involved. January 15, 1903, Goodspeed conveyed to the Wilton Woolen Company all his land, water rights and privileges. September, 1903, the Woolen Company conveyed to the present plaintiff the rights and privileges, upon which his bill is now brought. This deed is as follows: "The saw mill at outlet of Wilson Lake and yard subject to any rights of way hitherto reserved, or other reservations or restrictions of use of land heretofore made, and being the same mill described in deed by R. C. Fuller and George R. Fernald to Hiram Holt by deed of September 13, 1883, and of record book 98, page 352, in Franklin Registry with the following water power and privilege and none other to wit: The right to draw from Wilson Lake water sufficient to furnish forty (40) horse power with latest improved water wheels, after a reasonable development of the privilege, until the water reaches a point four and one-half ($4\frac{1}{2}$) feet below the top of the

dam as now used, but when the water has reached said point his right to use water is limited to one hundred square inches and he is to have that water right, and in case the dam furnishing said power is raised or the power from said lake is in any way increased the said Bass shall be entitled to his full proportionate benefit. In case at any time when the water is below the four foot and one-half mark, and the grantee is not using the full one hundred square inches of water thereof, the grantor reserves the right to draw sufficient water through its own private waste gate to make up the full one hundred inches including that used by the grantee. Said grantee is to bear one-half of the expense of keeping in repair and maintaining canal on land herein conveyed, head gates and dam."

It will be seen, by comparison, that this is the identical deed, the terms and provisions of which were in controversy in the case reported in 112 Maine, 483. All the other facts are precisely the same. The present defendant, was using the water, in 1903, which he conveyed to Bass & Company, just as it was when the former bill and cross bill were filed and determined, and as it is now. The dam, the flumes, the flowage rights are precisely the same. The parties are the same so far as the former and present controversies between the Woolen Company and Bass & Company are concerned, Fernald not having had at any time any interest in the matter. The plaintiff however contends that the point it now raises was not decided nor necessarily in issue in the former cases. The point now is, that under the phraseology of the deed, "after it (the water) ceases to run over the top of the dam and before it reaches a point four and one-half feet below the top of the dam." the defendant must cease to draw any more water for his mills below, so that the water may be conserved and prolonged to the use of the plaintiff while it is falling between the top of the dam and the $4\frac{1}{2}$ foot limit. It claims that the decision in the 112 Maine covered only the question as to who was entitled to the excess of the water after the uses carved out and conveyed by the deeds. But we think the very point now raised was put in issue by the pleadings and discussed in 112 Maine. The court says: "The great contention between the parties, however, arises during the period before the $4\frac{1}{2}$ foot limit is reached. That is the burden of the cross bill brought by Bass & Company in which they claim that the Woolen Company is not entitled to any water before that limit, that they are entitled to it all, except the Fernald grant, and they ask for

an injunction to restrain its use by the Woolen Company. This claim assumes that the Woolen Company retained no water rights after the Bass deed was given, and that assumption we have already shown to be groundless. The maximum ownership of Bass & Company until the four and a half foot level is reached is 40 horse power, and all the power in excess of that (excepting of course the Fernald one hundred square inches) belongs still to the Woolen Company, and can be used by it in connection with its plant still further down the stream. No other reasonable construction can be given to the deed viewed in the light of all the facts and circumstances." The court say "The burden of the cross bill" was, that the Woolen Company is not entitled to any water before that limit," $4\frac{1}{2}$ foot limit.

By comparison it will be seen in the cross bill in the former case, that Bass & Company claimed, even though the water was above the top of the dam, that the Woolen Company were not "entitled to draw any water before that limit" ($4\frac{1}{2}$ feet below) was reached. In the present case, Bass & Company claim that the Woolen Company is not entitled to draw any water "after it ceases to run over the top of said dam and before it reaches a point $4\frac{1}{2}$ feet below the top thereof." The material prayers in the two sets of bills are identical in meaning and nearly so in phraseology. Prayer 1 of the present bill prays: "That said court will grant a permanent injunction restraining the said Wilton Woolen Company, its officers, agents, servants and employees from opening said waste gate and withdrawing from said pond, through said canal, any water contained in said reservoir after it ceases to run over the top of said dam and before it reaches a point $4\frac{1}{2}$ feet below the top thereof." Prayer 2 of the former cross bills prays: "That a permanent injunction issue restraining the said Wilton Woolen Company, its officers, agents, servants and employees from opening said waste gate and withdrawing from said canal any water, until such time as the water in said pond reaches a point $4\frac{1}{2}$ feet from the top of said dam as now constructed."

In fact, as the construction of the same deed is the foundation of all the bills, it is evident that all the clauses of the deed were, or might, by proper pleading, have been put in issue. Accordingly the only difference in the present and the former claim is, that *then* the Woolen Company should not draw any water from any height, until the $4\frac{1}{2}$ foot limit was reached, and that *now* it shall not draw any water after it reaches the top of the dam, until the $4\frac{1}{2}$ foot limit is reached. It

should be here noted that "the power in excess" referred to in the part of the opinion quoted, included the disposition of all the water from the top of the dam, or a higher level, to the 4½ foot limit below. But the greater includes the less, and the claim in the former case, that the Woolen Company should not draw any water when the water was above the top of the dam, included the claim that they should not draw any water when the water was below the top of the dam. Accordingly the issue now raised was clearly placed before the court in the pleadings in the former bill and cross bill, and under the well settled rules of law is res adjudicata.

There is another interpretation of the language of the deed which, we think, concludes the rights of the plaintiff. It is a cardinal rule that words used to give expression to an instrument should be "construed according to the common meaning of the language." The language of this deed confers the right to plaintiff to draw water to furnish 40 horse power. . . . "until the water reaches a point 4½ feet below the top of the dam as now used." The controlling term here used is the word "until." "Until" is defined in Words and Phrases as follows: " 'Until' is a restrictive word; a word of limitations. The word 'until' is a word of limitations, used ordinarily to restrict what immediately precedes it to what immediately follows it. Its office is to point out some point of time, or the happening of some event, when what precedes it shall cease to exist or have any further force or effect. The word 'until', whether found in a contract or in a statute, is the same, and in either case must depend upon the intention of those using it, as manifested by the context, and considered with reference to the subject to which it relates."

Cyc defines it as a "restrictive word; a word of limitation."

The word "until" does not negative or limit any right of the Woolen Company to use the water. It does, however, manifestly limit the rights of Bass & Company after the water has reached the 4½ foot limit. The use of the water by the Woolen Mill and by Bass & Company is a continuing use, expressed by the word "until", which carries them both, not to the top of the dam, but to the 4½ foot point; then Bass & Company are reduced to 100 square inches. And the purpose as well as the effect of the limiting word was to accomplish this reduction. We think this word, when fitted into the background of the transaction, as it must be to give it a fair interpretation, fully warrants the above conclusion. It is almost inconceivable, if the

parties understood the matter as the plaintiff now says, that they would have employed the language used in this deed to give expression to their purpose, when a single sentence properly phrased would have expressed exactly the meaning for which it now contends.    It is further inconceivable that the defendant company, having full power to protect its own business, would intentionally deprive itself, for the indefinite time the water might fluctuate between the top of the dam and the $4\frac{1}{2}$ foot limit, of the use of sufficient water to operate its own mills, and thus leave them idle and unproductive.

*Bill dismissed with costs.*